Mr. Chief Justice Johnson delivered the opinion of the Court. The objection that the court below should have summoned a jury and have proceeded to final judgment upon the overruling of the demurrer to the declaration, is not well taken. AlHhat could have been done legally, would have been to summon a jury to assess the damages and upon such assessment to have rendered an interlocutory judgment against the defendant Crow, and then to have left the same to abide the final event of the suit against his co-defendants. (See chap. 126 of the Digest, and also the case of Gordon vs. The State use of Wallace, ante, 12.) Thus far, then, the action of the court was erroneous, and in case the real merits of the cause shall not have been fully and completely vindicated and upheld, it is clear that the j udgment ought to be reversed. The next and indeed the most important point presented by the record involves the correctness of the decision ol the court below in excluding the testimony offered by the plaintiff to sustain the issue formed upon her replication to the defendant’s second plea. This plea broadly denies that there is any record of the recovery alleged in the declaration remaining in the justice’s court. It is contended by the plaintiff’s counsel, that the issue presented by this plea is wholly immaterial, and that as a matter of course, although the evidence shall have been properly excluded, yet the defendants can derive no advantage from it. The defendants on their part assume that in no event can they be held responsible for the breach of duty charged against the sheriff, for the reason that the judgment rendered by the justice, as described in the declaration, is not a fit subject for record in the office of the clerk of the circuit court, so ns to afford a foundation for a valid execution. If the position of the plaintiff be correct, there can be no occasion to investigate that of the defendants, since, even conceding it to be sound in point of law, yet it can be productive of no beneficial result. The question then that arises here is, whether the averment in the declaration that the record and proceedings in- the cause still remained in the justice’s court, is a material and traversable averment. We suppose it to be a clear proposition that, where an execution is regular and fair upon its face, so as to afford complete protection to the sheriff in executing it, the defendant in the execution can require of him a strict compliance with the law, and that in case he shall fail to act when required to do so or abuse his authority, he and his securities will be held responsible to the full extent of the damage incurred. The question then in a case situated like the present is not whether the plaintiff in the original action has a valid subsisting judgment, but whether the sheriff, when he seized and sold the property, acted in his official capacity, clothed and armed with the requisite legal force and power to enable him to act with impunity within the pale of that authority. In order to hold the sheriff and his securities liable for an injury to the defendant in the execution, it is surely sufficient to show that the principal has been guilty of default' or misconduct in his office. It would be strange, if not absurd, to concede that the sheriff would receive the protection of the law in enforcing an execution regular upon its face and disclosing jurisdiction of the subject matter, though not in truth based upon a judgment of a competent court, and yet that he could not be considered as acting as an officer, and that consequently he could not be held responsible upon his official bond. The case of Ex parte Hurd, (4 Hill) is strongly in point, and though it does not furnish a direct and positive decision, affords a strong argument in its support. The object of that case was to show when the sureties could not be held liable and in order to make that matter manifest it has gone very far to show such cases as would .create a liability. The court by Co wen, J. said, “ The condition is that Hart shall perform and execute the office &c., not that he shall avoid the commission of wrongs generally. The words cannot be extended beyond non-feasance or misfeasance in respect to acts which by law he is required to perform as sheriff. Here the sureties are sought to be fixed with the consequences of a trespass having no connection with his office, any more than an assault without a warrant of arrest. The charge of a trespass assumes that the act could not have been virtute officii. It is no more the act of a sheriff because done colore officii than if he had been destitute of process. To allow a prosecution would be equivalent to saying that the sureties of a sheriff are bound for his general good behavior as a citizen.” And again in the same case he said, “ But I presume it is nowhere asserted that the words extend in their natural import to an act done under the mere pretence or color of authority, where there is in fact none. There being no authority, there is no office and nothing official. This is a rule which ranges through all the grades of legal power from the monarch to the constable.” We entertain no doubt of the legal sufficiency of the writ of execution to subject the sheriff and also his sureties, in case the breach is well assigned and supported by competent proof. The declaration sets out a judgment rendered by a justice of the peace, that an execution issued upon the same to the constable of the township and that a return of nulla bona was endorsed upon it, and that afterwards the plaintiff in the said judgment caused a transcript of the same and also of the proceedings had in the justice’s court to be filed in the clerk’s office of the circuit court of Ouachita county and to be entered of record therein according to the statute in such case made and provided, and then it describes an execution in the usual foim directed to the sheriff of Clark county, by which he was commanded to seize upon the steamboat Arkadelphia and to make the money specified in the judgment and to have the same before the Ouachita circuit court on the return day of the execution &c. We think that, under the 9th section of the 18th chapter of the Digest, the plaintiff had the right to run the execution directly against the boat by name and that the departure from the ordinary form of an execution in this respect eannot affect its validity. That section provides that, “ If the owner, master, supercargo, or consignee of any such boat or vessel, seized by attachment shall at any time before judgment, give bond to the plaintiff with security to be approved of by the clerk of the circuit court, or by the judge in term time or justice of the peace, as the case may be, in double the- amount of the demand sued for, conditioned to pay and satisfy such judgment as the court or justice may render against such boat or vessel, or against such owner, as the case may be, together with costs of suit, then such boat or vessel shall forthwith be discharged from such attachment, seizure and detention, but shall nevertheless be liable to be taken and sold on any execution to be issued on any such judgment or upon the judgment that may be rendered at any time on the bond required to be given by the defendant party.” The execution being in due form and fair upon its face, under the doctrine already laid down it was sufficient of itself independent of the judgment upon which it was founded to fix and determine the liability of the sheriff and also of his sureties in case of an abuse of his power whilst acting under it. The authority under which this proceeding is presumed to have been had, is contained in sections 139 and 140 of chapter 95 of the Digest. They provide that “Every justice, on demand of any person in whose favor he shall have rendered a judgment for more than ten dollars, exclusive of costs, shall give to such person a certified copy of such judgment and the clerk of the circuit court of the same county in which the judgment was rendered shall upon the production of any such transcript, file the same in his office and forthwith enter such judgment in the docket of the circuit court for judgments and decrees, and shall note therein the time of filing such transcript.” And that “ Every such judgment, from the time of filing the transcript thereof, shall be a lien on the real estate of the defendant in the county to the same extent as a judgment of the circuit court of the same county and shall be carried into execution in the same manner and with like effect as the judgments of such circuit court; but no execution shall be sued out of the circuit court therein until an execution shall have been issued by a justice and returned that the defendant has no goods or chatties whereof to levy the same.” The ground taken by the defendant is that this act was designed alone to enable a party, having a judgment before a justice of the peace, to subject the real estate of the defendant lying within the same county, and that consequently such a judgment as the one described in the declaration could not be filed in the circuit court so as to authorize an execution against a steamboat. The statute does not only provide that such judgment shall be a lien on the real estate of the defendants lying in the c'ounty, to the same extent as a judgment of the circuit court of the same county,, but also that it shall be carried into execution in the same manner and with like effect as the judgments of such circuit court. The 2d section of chapter 67, providing for the execution of judgments in the circuit courts, enacts that such execution, except in cases hereafter otherwise provided, shall be a fieri facias against the goods, chat-ties and real estate of the party against whom the judgment, order or decree shall have been rendered. If the intention of the legislature had been to confine the plaintiff to the real estate lying within the county, they would necessarily have only permitted an execution to run against such real estate. We think therefore that to give the act in question the restricted construction contended for by the defendants, would not be to achieve the objects contemplated. It is conceded that one of the evils of the old law was that although a judgment debtor might be the owner of valuable lands lying within the limits of the justice’s township, yet he could set his creditors at defiance for the want of the requisite means to reach and subject it to his debt. This however was not the only inconvenience experienced from the same source. It was equally important that the arm of the law should be extended so as to enable the creditor to go beyond the territorial limits of the county, in order to subject other lands, and, in some instances, even personal property itself. The statute is remedial in its character and is consequently entitled to a fair and liberal construction. We feel satisfied from the several provisions of the statute referred to that the execution exhibited in the transcript is not void as contended, but that on the contrary there is nothing disclosed that can possibly affect its validity. This being the case it follows of necessity that the entire recital in respect to the judgment and all the previous proceedings are nothing more than mere inducement to the real cause of action. If mere inducement, could it become material by being stated, or may it be rejected as surplusage? It is a familiar and well settled rule that where a party makes a matter, which would otherwise be wholly immaterial, a part and parcel of the material description of his cause of action, he will be held to the same strictness of proof that he would be were it an essential ingredient in such cause of action. The case of Savage qui tam &c. vs. Smith, is strongly in point. That was an action of debt against a sheriff’s bailiff for extorting illegal fees in executing a fi. fa. The declaration set out the judgment in extenso, and then averred that the plaintiff sued out a fieri facias upon the said judgment to levy the said debt and costs, returnable &c., and also that the judgment was then in full force. It was urged for the plaintiff that the fi. fa. in its nature imported a precedent judgment; that it was not necessary to aver any judgment in that action and that where there is an averment in a declaration, that is not necessary to maintain the action, the plaintiff is not bound to prove it, and the judgment was only inducement, like a lease for tythes in an action by the lessee agaimst a farmer for subtraction against the statute, where the lease need not be proved exactly as laid. The counsel for the defendant took opposite ground and contended that, if the judgment was stated, it must be proved, and referred to Crawley and Blewil, 12 Mod. 127. The court in that case were unanimously of the opinion that since the plaintiff had set out the judgment, he was bound to prove it. The plaintiff in this case insists that, inasmuch as the judgment was unnecessarily set out in the declaration, it need not be proved, but that it may be rejected altogether as surplusage, and in order to establish his position has referred us to several authorities. We have consulted most of them but have not found him borne out. The distinction, as we have been enabled to collect it from the books, is not that matter constituting the foundation of the action shall be strictly proven and that mere matter of inducement may be rejected as surplusage, but on the contrary, that the former when set out in haec verba shall be supported by strict proof and that the latter needs only to be proved substantially. This is the distinction drawn from the authorities and laid down by this court at the July term, 1850, in the case of “ The State Bank vs. Magness et al. In that case this court said, “ The alleged ground of variance is, that the writ which issued in the first action is described in the replication as a writ directed to the sheriff, whilst that offered in evidence is directed to the coroner. This objection, if sustainable, must be sustained on the ground that it is descriptive of a material fact in the pleadings and although such pleading would have been sufficient without this circumstantial descriptive averment, 'yet it cannot be disregarded as surplusage, and the party must be held to proof corresponding with such averment. The general rule is that no allegation, which is descriptive of any matter of fact essential to the claim or charge, can be altogether rejected, inasmuch as a variance destroys the legal identity of the claim or charge alleged with that proven. (3 Stark. Ev, 1531.) This general rule, however, is more particularly applicable to descriptions of specialties which are the foundation of the action, than such as are referred to as inducement to the action or de-fence ; and the rule in regard to strictness in proof for this purpose is much relaxed. And also in allegations in matter of substance and allegations of matter of description the same strictness is not observed. Thus, in the latter class of cases it has been held that in an action for malicious prosecution, the day of the plaintiff’s acquittal is not material; neither is the term in which the judgment was recovered a material allegation in an action against a sheriff for a false return on the writ of execution : for in both these cases the record is alleged by way of inducement only, and not as the foundation of the action, and therefore literal proof is not required.” If this be the real distinction therefore, the record of the judgment, though unnecessarily alleged in this case, cannot be altogether rejected as surplusage and all that can be legally claimefdfor it is that it be not subjected to the same strictness of proof that would be required if it were a fact essential as constituting a part of the real cause of action. The point now to bo determined is whether the evidence offered to establish the existence of the judgment was improperly excluded by the court. This question will necessarily depend, for its solution, upon the construction which shall be placed upon the act under which the record of the justice was filed and docketed in the office of the clerk of the circuit court. The 139th section of the act already referred to makes it the duty of the county clerk to file the justice’s transcript of the judgment in his-office and forthwith to enter such judgment in the docket of the circuit court for judgments and decrees, and to note therein the time of filing such transcript; and the 140th section declares that “ Every such judgment, from the time of filing the transcript thereof, shall be a lien on the real estate of the defendant in the county, to the same extent as a judgment of the circuit court of the same county and shall be carried into execution in the same manner and with like effect as the judgments of such circuit court.” We cannot entertain a doubt but that the legislature intended to put these judgments upon the footing of judgments in the circuit courts in all respects. The supreme court of New York, in the CE.se of Jackson vs. Jones, (9 Cowen 191,) said, “The legislature, by directing the clerk of the court of common pleas to enter the judgments upon the filing of the transcript, seems to have decided that the transcript without the oath of the justice is sufficient evidence of the judgment before him. If the transcript were to be verified by the oath of the justice it should be before or at the time when it is filed and made the evidence or foundation of a judgment, upon which the clerk of the court is authorized to issue an execution. The transcript is prima facie e\idence of the judgment.” The court for the correction of errors of the same State, in the case of Tuttle vs. Jackson p. 220, when commenting upon the same statute, said, “ The transcript and entry were in the nature of a record of certain judicial pro. ceedings, which by law were deposited in that office. The exemplification under the official seal of the clerk is as good evidence of the fact that such a transcript is filed and that such an entry of the judgment is made, as a sworn copy of the same transcript and entry would be if produced.” (See also Arnold vs. Gorr, 1 Rawle Rep. 223.) The clerk of the Ouachita circuit court certifies the record as being a full and perfect transcript of the judgment and proceedings in the case of John McConnell against the steamboat Arkadelphia, as the same appeared from a transcript of said judgment duly certified by Thomas R. Mur-rell, a justice of the peace, and filed in his office on the 16th day of May, A.D. 1844, and from the entry of said judgment as the same appeared on record in the judgment docket of said circuit court then remaining in his office. The certifícate shows a strict compliance with the provisions of the statute and there being no doubt of its competency to establish the facts therein stated, it is clear that the court erred in excluding the evidence. But it is contended that, in no event, can the plaintiff be benefited although the court below may have erred in rejecting the transcript, because by moving for a new trial he waived all previous exceptions. It is somewhat doubtful, from the language employed in the motion, whether it was designed as one technically in arrest or simply for a new trial. However we think that the preponderance is in favor of the latter. She states as one reason amongst others that the testimony offered by her was sufficient to sustain the issue on her part and to entitle her to a judgdment. This is conceived to be equivalent to saying that the court erred in excluding the evidence which was offered and reserved upon that point and asking a new trial for that error. The evidence adduced to establish the issue formed upon that replication was saved at the time of its exclusion and made a matter of record. This court in the case of Berry vs. Singer, (5 Eng. Rep. 491) said, “ Because the waiver, which is the result of a motion for a new trial, is no mutilation of the record producing thereby any necessity for its reproduction in the last bill of exceptions, but simply a waiver of the right to insist upon exceptions taken during the trial.” We think that the reference to the evidence which had been previously saved by bill of exceptions was sufficient to retain it upon the record and that consequently the question presented to the lower court is now properly before us. The question raised being before us, the decision must necessarily be against the ruling of the circuit court. It is therefore considered and adjudged that the judgment of the circuit court of Clark county be and the same is reversed, and it is further ordered that the cause be remanded to said circuit court to be proceeded in according to law and not inconsistent with this opinion. Mr. Justice Scott not sitting.